SUNFLOWER COUNTY v. BANK OF DREW et al.*

(Division A.   June 9, 1924.   Suggestion of Error Overruled Aug. 28, 1924.)

[101 So. 192.  No. 24171.]

1. PAYMENT.  Applied most beneficially for debtor where not applied by either debtor or creditor.

Payments should be applied most beneficially for debtor and not creditor where neither debtor nor creditor applies the payment.

2. DEPOSITORIES.  Depository's surety held not liable for amount due county when bank closed doors after expiration of bond.

Where county treasurer did not withdraw funds on deposit on expiration of depository's bond, but continued to make deposits, and before bank closed its doors, the county drew out of the bank more than amount on deposit on expiration of bond, the surety was not liable, since payments will be considered as payments of fund due county on expiration of bond.

3. DEPOSITORIES.  Chancellor's refusal to give county decree against bank held proper in view of liquidation of bank's assets by same court.

Chancellor's refusal to give county decree against bank for amount of funds due county in suit on bank's bond as county depository held proper, where the affairs of the bank were being liquidated by the same court which had full control over all assets and in due time would adjudicate bank's liability and county's preference lien.

*Headnotes 1.  Payment, 30 Cyc, p. 1240; 2. Depositaries, 18 C. J., section 63; 3. Depositaries, 18 C. J., section 77 (1925 Anno).

APPEAL from chancery court of Sunflower county.

HON. E. N. THOMAS, Chancellor.

Suit by Sunflower County against the Bank of Drew and others. Decree for defendants, and plaintiff appeals.

*Affirmed.*

*Moody & Williams,* for appellant.

The Bank of Drew is, of course, liable for the amount due of thirteen thousand six hundred thirty-nine dollars and twenty-two cents when its commission as a depository expired; and also the further amount of two thousand three hundred thirty dollars and forty-nine cents, when it was closed, or the aggregate amount of fifteen thousand three hundred sixty-nine dollars and seventy-one cents. This we all admit.

But whether, for the first amount, the bank is only liable as a depository, and, as a consequence, the guaranty company, as its surety, is also liable is in dispute. Therefore, to determine the nature of the liability, as to the first amount, it was necessary that this bill be filed.

Again, if the bank was not liable as a depository, for the first amount, but only as a bank, then there can be no doubt but that, as a bank, it is liable for both amounts or the aggregate sum of fifteen thousand three hundred sixty-nine dollars and seventy-one cents. If so, has the county the right, by suit in equity to establish that liability, notwithstanding the bank was closed by the banking department and a liquidator appointed to take charge of, and administer, its assets? As to that we direct attention to chapter 177, Laws of 1922.

While the remedy provided in this statute is more or less summary, yet, we insist, that the statute may be enforced by suit in equity, if desired; and that, when the amount thus secured by the statute is fixed, a decree should be entered requiring the payment, by the liquidator, "out of the first money coming into his hands."

II. *The liability of the bank, as depository, and the consequent liability of the guaranty company as a surety on its bond.*

For the amount due by the bank, as a depository, when its commission expired, we contend that the bond was breached when it failed to pay the amount due to the treasurer, entitled to receive it, in the absence of a depository, who had qualified as such.

If there was no depository to whom the bank, when its commission expired, could pay the amount due by it to the county, then certainly it must be, as it has been conceded, that the amount thus due could be paid to the county treasurer .

Therefore, the sole question, as to this point is, was the guaranty company released from, its liability, as a surety, because the county treasurer did not demand that the bank of Drew as a depository, pay to him, as such, the amount due when its commission expires, or because a new depository had not qualified. Certainly it will be conceded that, as between the county and the bank of Drew, as a depository, the relation of creditor and debtor existed, and that for the payment of such debt the guaranty company was liable only as a surety. Therefore, in making this contention, counsel failed to note that it is not inaction, but positive action, that releases a surety.

It is unnecessary to refer the court to authority to the effect that it is only affirmative action, and not inaction by a creditor that releases a surety from liability. *Fidelity & Deposit Co.* v. *Wilkinson,* 109 Miss. 879-89, bottom of page; *G. W. Marlar, et al.* v. *State,* 62 Miss. 677, syllabus.

As to the contention, that the bond became *functus officio* and discharged January 5, 1921, we have pointed out, no neglect on the part of the board of supervisors and the treasurer could release a surety. If, however, by the condition of the bond, if the bond was conditioned

as the statute prescribed, the liability thereon ceased on the 5th day of January, 1921, then we, of course, admit the surety was discharged. However our contention is that the bond is not so conditioned. Sections 742 and 2801, Hemingway's Code. In addition to the statute we direct special attention to *U. S. F. & G. Co.* v. *Pensacola,* 68 Fla. 357, 67 So. 87; *State* v. *Smith,* 87 Miss. 551; *Bank of Gulfport* v. *Gulfport City,* 117 Miss 591-600-601.

But it is stated that thereafter there was deposited in the bank of Drew, as a bank and not as a depository, to the credit of the General County Bond Interest Fund nineteen thousand thirty-four dollars and fifty-nine cents, and that it thereafter paid warrants drawn against said fund aggregating eighteen thousand four hundred sixty-two dollars and twenty-seven cents; that there was thereafter deposited to the credit of the District No. 2 Bond Interest Fund, thirteen thousand eight hundred three dollars and nine cents, and that subsequently warrants, against said fund aggregating twelve thousand forty-four dollars and ninety-two cents, were paid.

As to these subsequent transactions, the rights of the complainant against the bank of Drew is stated by the supreme court in *Powell* v. *Board of Supervisors of Tunica Co.,* 65 So. 491-501.

If the principle quoted be true as to amounts received in excess of what it was authorized to receive, then certainly such principle applies with greater force when there was no authority at all to receive such amounts. Yet, it is insisted that the warrants thus paid, after the commission of the bank, as a depository, had expired, should be, by the court, applied in payment of the amount due by the bank as a depository, as of the date its commission expired. Therefore, the question presented is, has the court at the instance of a surety, not the principal debtor, the right to apply payments, made by the latter to the creditor, on a debt for which the surety was liable, in utter disregard of the interest of the creditor, as well as that of the debtor, or rather the creditors of an

insolvent debtor, entitled to priority of payment out of the latter's assests.

The contention is that the warrants, paid by the bank of Drew after it ceased to be a depository, should be applied in payment of the amount due the county, at the time the commission expired. In making this contention, the interest of everyone other than the guaranty company is disregarded. This is obvious when it is considered that there are others who, as to the money which is said to be on hand, have rights which must be considered.

If the trust funds, deposited in the Bank of Drew, after it ceased to be a depository, have not been paid, then the amount thus due the county is entitled to priority of payment out of the funds now on hand. If the amount due the county, for these trust funds, has been paid, or if the warrants paid are, by the court, applied in payment of these trust funds, then the depositors of the bank have a prior claim to said money which is stated to be on hand. Therefore, if the warrants paid by the Bank of Drew, after it ceased to be a depository, is by the court, applied in payment of the amount due by the bank, as a depository, for which the guaranty company is liable, then the inevitable effect of such application would be to utterly disregard the rights of the depositors entitled, as against the guaranty company, to priority of payment. Yet the effort is made to subordinate the rights of the depositors, entitled to priority, in order to relieve a surety for a debt, for which it is liable. For the law as to this, see: 30 Cyc. 1251, sec. 2; *Gordon* v. *Hobart,* 2 Story 243, 264, 10 Fed. Cas. No. 5, 608; *Wandotte Coal, ets., Co.* v. *Wyandotte Paving, etc., Co.,* Ann. Cas. 1917c. 580-582; *United States* v. *Eckford, etc.,* 11 Law Ed. 120.

As to the amount due the county by the bank as a depository, the relation of debtor and creditor exists. As to the deposits made after the bank ceased to be a depository, the relation between the county and the bank was that of trustor and trustee. Therefore, the case is

different from the Eckford case, cited above, in that in that case the relation of trustor and trustee existed as to both terms. For that reason this case is a much stronger case inasmuch as it is sought to apply funds paid by a trustee, not in discharge of a trust obligation, but in discharge of a personal obligation due as a debtor.

The effect of the distinction, as to the appropriation of payments, is correctly noted in *Board of Commissioners* v. *Citizens Bank,* 69 N. W. 912. In the instant case the Bank of Drew, as a depository, was indebted to the county for a fixed amount, then due, for which the guaranty company was liable. Thereafter the sheriff and tax collector, without lawful authority, deposited in the Bank of Drew, as a bank and not as a depository, money belonging to the county. The monies thus deposited were trust funds, and, as between the county and the bank, the relation of trustor and trustee, as to these funds, existed. Warrants drawn against those funds were paid by the bank, as a bank and not as a depository. When the bank paid and delivered these warrants to the board of supervisors it acted as a trustee, and neither the board nor the bank could use these warrants to discharge a debt due by the latter to the county. If not, then certainly the court will not do that which they could not do.

Therefore, there are two accounts; one against the bank, as a depository, when the relation of creditor and debtor existed, and one against the bank, as trustee, for funds intrusted to it. If the warrants paid be considered as a payment, then it is clear that the payment was made by the bank, as a trustee, and not as debtor, and should be credited on the trust account.

*William M. Hall,* for appellee.

There is no question about the correctness of the county's contention, that it became the bank's duty to turn over the funds to the county treasurer when its depository

term ended, and it did not re-qualify and the county had no depository.

The question is whether the bank breached that duty and its bond. We say that, on the face of this case, it did not, and that the statutes lead irresistibly to the conclusion. The county funds, in the eyes of the law, were in the hands of the county treasurer and passed therefrom to the county depository. In section 4235, Hemingway's Code, it is provided: "and the said board shall cause the county funds and all other funds in the hands of the county treasurer to be deposited in the bank or banks proposing the best terms," etc. This idea is carried out in the recitals of the bond. And when the depository's security becomes impaired and it fails to deposit additional security or when it does not qualify, or no depository is created, the funds pass back to the hands of the county treasurer. Section 4240, Hemingway's Code. In section 4234, Hemingway's Code, it is provided: "in event no bank qualifies as a depository, the funds belonging to the county shall be kept by the county treasurer."

In view of these statutory provisions, when the Bank of Drew failed to qualify for the year following January 5, 1921, and the treasurer allowed the accounts to be continued, deposits to be made thereto and warrants to be drawn thereon and paid therefrom, the Bank of Drew, in the eyes of the law, turned the funds over to him as county treasurer, and he received them as such, adopted the bank as his depository and the accounts as his, and made himself and sureties on his official bond solely responsible and liable for the safe keeping and accounting for the funds, with the right to the county and himself, when subrogated to the rights of the county, to have the same paid out of the assets of the bank in preference to the claims of creditors of the bank. The treasurer could not escape the effect of his action on the ground that he did not know of the continuance of the account, because under the law (sections 4243 and 4245, Hemingway's

Code) a depository receipt has to be sent to the treasurer in the case of every deposit, and, according to the agreed statement of facts in the case, receipts were issued in the regular way for all deposits made to the account. There can be no other conclusion without doing violence to the clear provisions of the law and the law's scheme for securing the public funds in the contingencies mentioned in the statute. It results, we respectfully submit, that the bank did not breach its duty to turn over to the county treasurer when its depository term ended.

The treasurer's adoption and continuance of the account also discharged the bond, because in the circumstances existing, it amounted to a new arrangement within the contemplation of the law. *Fidelity & Deposit Company* v. *Wilkinson County*, 109 Miss. 879, 897; *United States Fidelity & Guaranty Co.* v. *American Bonding Company*, 31 Okla. 669, 122 Pac. 142; *Pacific County* v. *Illinois Surety Co.*, 234 Fed. 97. This court held in *Fidelity & Deposit Company* v. *Wilkinson County*, 106 Miss 655, 663, that the depository's suspension during the depository term constituted a breach of the bond and indicated by its language that a breach of the bond otherwise could be shown only by a demand and failure to pay during the term or at the expiration of the term.

It is clear, we submit, upon reason and authority that the guaranty company's bond in this case was discharged by operation of law long before the bank suspended, and that the bank's suspension after operating for a year and fifteen days did not constitute a breach of the bond and render it liable.

We further submit that if the bond had not been so discharged and had continued liable until the balances due January 5, 1921, were paid, the county was not entitled to recover that amount from the guaranty company because the bank after the expiration of its depository term made payments in excess of those balances, which being unapplied, either by the bank or the county, the law

applies after the controversy to the oldest items of the account, that is, the balances due January 5, 1921. *Fletcher* v. *Gillan,* 62 Miss. 8, 11; *Duffey* v. *Kilroe,* 116 Miss. 7, 11; 21 R. C. L. 104. The rule has been applied in contests between sureties on successive depository bonds in *Board of Commissioners of Redwood County* v. *Citizens Bank of Redwood Falls,* 67 Minn. 236, 69 N. W. 911; *Fremont County* v. *Fremont County Bank,* 138 Iowa, 167, 115 N. W. 925; and in *City of Pittsburgh* v. *Rhodes,* 230 Pa. 397, 79 Atl. 634.

Counsel invoke the rule that third persons, like guarantors, sureties and endorsers, cannot control the application of payments of funds in which they have no special rights or equities and cite 30 Cyc. 1251, sec. 2. That rule simply means that the debtor has the first right to apply a payment as he pleases and that a surety cannot control that application unless the surety has some special right or equity in the property or funds being paid. The rule with reference to the court's application of payments is stated in 21 R. C. L. 99.

While the surety cannot control the application of payments, as has been conceded, it cannot be deprived of their application in accordance with the rule of law mentioned. *Pardee* v. *Markle,* 111 Pa. St. 648, 56 Am. R. 299, 304.

*Flowers & Brown,* for the State Banking Department.

So far as the state banking department is concerned we feel that this suit is entirely out of place. The funds involved are trust funds; and constitute a first and prior claim against the assets of the failed bank after the expenses of the liquidation have been paid and cannot be taken by the creditors of the bank. Section 3077, Code 1892; section 3485, Code 1906, and chapter 177 of the Laws of 1922. We do not see how a decree of this court against the state banking department for the amount involved is necessary at all. There is no showing that the banking department is denying the county's claim or

that it is in any way trying to avoid its liability therefor. We admit that these deposits were made and that when the bank closed, there was a balance due the county in the amounts shown in the agreed statement of facts.

The expenses incurred in the liquidation of a bank are, by the banking act, made a paramount and first lien against the assets of the failed bank. See section 3623, Hemingway's Code. The liquidation of the Bank of Drew has been submitted to the chancery court of Sunflower county and is being administered under its directions. The trial judge was, therefore, thoroughly familiar with all phases of the liquidation. The law clearly defines and marks out the procedure for the liquidation and suits of this nature against the banking department only tend to confuse, retard and hamper the liquidation, to say nothing of the fact that the expenses of the liquidation are greatly increased thereby. We contend that under the law, chapter 177, Laws 1922, before this court will interfere with the liquidation and enter an order directing the payment to the county in the manner prayed for in the bill herein, there would necessarily have to be a showing that that liquidation was failing to comply with the law. The law marks out the course to be followed by the banking department. This department is an arm of the state. It will be presumed in the absence of a showing to the contrary that the law is being complied with. The court, without a showing that there has been a failure to comply with the law, will not enter an order directing the banking department to comply therewith.

Argued orally by *C. C. Moody,* for appellant, and *W. M. Hall* and *J. T. Brown,* for appellees.

HOLDEN, J., delivered the opinion of the court.

The suit was instituted in the chancery court on behalf of Sunflower county against the Bank of Drew and the liquidating agent of the state banking department, and the United States Fidelity & Guaranty Company,

surety on the bond of the bank as a county depository, to recover a balance of about sixteen thousand dollars due the county by the bank for funds deposited therein, after the bank closed its doors January 20, 1922. From a decree denying the relief sought this appeal is prosecuted.

The case in substance is this: The Bank of Drew qualified as county depository from January 5, 1920, to January 5, 1921, with appellee guaranty company as surety on its bond. The bank closed its doors January 20, 1922. On January 5, 1921, the bond of the guaranty company had expired and the depository term of the bank ended. At this time the bank had on hand funds of the county amounting to thirteen thousand six hundred thirty-nine dollars and twenty-two cents. The funds remained in the bank to the credit of the county, and during the time between the expiration of the bond and the fail-ure of the bank other funds of the county amounting to about thirty-two thousand dollars were also deposited in the bank.

The bank was not then a legal depository, but the treasurer reassumed the custody of the funds for the county, and the board of supervisors issued warrants and drew out of the bank during this time more than the sum of thirteen thousand six hundred thirty-nine dollars and twenty-two cents. When the bank closed its doors, there was a balance due the county which was unpaid, and this suit followed against the bank and the surety company to recover the unpaid balance.

When the depository term of the bank ended January 5, 1921, and the guaranty bond expired, the bank was due the county thirteen thousand six hundred thirty-nine dollars and twenty-two cents. Thereafter the treasurer, in legal effect, took over the funds for the county, as it was his duty to do under sections 4234 and 4240, Hemingway's Code. From that time on the bank was not a legal depository, but was the depository adopted by the treasurer, who, under the law, received the pub-

lic funds deposited therein for over one year after the expiration of the guaranty bond and until the bank was closed, January 20, 1922.

During the time between the expiration of the guaranty bond and the closing of the bank, warrants were drawn by the board of supervisors against the funds in the bank and were paid; the amount thus paid out by the bank was in excess of thirteen thousand six hundred thirty-nine dollars and twenty-two cents due the county by the bank at the end of the depository term and expiration of the guaranty bond.

During the period between January 5, 1921, and January 20, 1922, while the bank was not a legal depository and after the guaranty bond had expired, about thirty-two thousand dollars was deposited in the bank to the credit of the county, and receipted for to the treasurer. Warrants were drawn by the board of supervisors and paid by the bank in the regular course of the business of the county until the bank closed January 20, 1922, owing the county about sixteen thousand dollars, for which this suit was filed.

The contention of the appellee guaranty company is that it is not liable because its bond was discharged by operation of law, and also that the county had been legally repaid the balance due it January 5, 1921, before the bank's suspension, January 20, 1922, and that the county's rights in the premises were solely against the bank and its assets for the balance due at the time of its suspension.

The county contends that the guaranty company is liable on its bond for the thirteen thousand six hundred thirty-nine dollars and twenty-two cents due by the bank to the county on January 5, 1921, the date of the expiration of the guaranty bond and the ending of the term of the bank as a depository, because it did not turn over this balance to the county treasurer when its bond expired, and that the subsequent payment of this amount

by the bank on warrants drawn during the period between January 5, 1921, and January 20, 1922, did not discharge the indebtedness due by the bank to the county January 5, 1921, for the reason that about thirty-two thousand dollars was deposited in the bank to the county's credit between the time the bond expired and the bank closed, and that this amount was a trust fund which could not be used in payment and satisfaction of the legal depository debt of thirteen thousand six hundred thirty-nine dollars and twenty-two cents.

We think the position of the appellee guaranty company is well grounded. The rule of the application of payments is well settled in this state. Under our rule, which seems to be contrary to that in many other jurisdictions, the law applies the payment most beneficially for the debtor, and not the creditor. Therefore where neither the debtor nor creditor applies the payment, the law will appropriate it most beneficially for the debtor. In the case before us the payments made by the bank, which were in excess of the thirteen thousand six hundred thirty-nine dollars and twenty-two cents fund in question, are to be considered as payments of the fund it was due the county at the time its depository term ended and the guaranty bond expired. Therefore, the amount due by the bank to the county when the guaranty bond expired was paid to the county through the warrants drawn by the board of supervisors on the fund before the bank was closed. *McLaughlin* v. *Green,* 48 Miss. 175; 30 Cyc. 1246, and note 62.

The assumption of custody of the funds in the bank by the treasurer, and the payment of warrants drawn thereon in the regular conduct of the business of the county for the year following the expiration of the bond, constituted a new arrangement and released the guaranty company from liability after the thirteen thousand six hundred thirty-nine dollars and twenty-two cents had been paid to the county. *Fidelity & D. Co.* v. *Wilkinson County,* 100 Miss. 879, 69 So. 865.

The other question presented in this case is whether or not the chancellor erred in refusing to give a decree against the bank in favor of the county for the amount of the funds due the county. We think the action of the chancellor in refusing the order was correct. It appears that the affairs of the closed bank are pending in and being liquidated by the same court, which has full control over all of the assets, and in due course of time will adjudicate the liability of the bank and the preference lien against its assets to secure the payment of the amount due the county, and will also make any further orders necessary to enforce the county's special claims against the assets of the defunct bank. For this reason we think the chancellor was well within his discretion to deny the relief sought in the case at bar.

The judgment of the lower court is affirmed.

*Affirmed.*

SMITH, C. J., concurs in the result.